FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS, FLORIDA

2016 AUG -9 PM 1:37

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

UNITED STATES OF AMERICA,          )
STATE OF FLORIDA and STATE         )
OF MARYLAND                        )
*ex rel.* JAMIE WILLIAMS,          )
                                   )    CASE NO.:
        Plaintiffs,                )    2: 16-CV - 622 -FtM- 99 MRM
                                   )
v.                                 )    (FILED UNDER SEAL)
                                   )
SAVN ADMINISTRATIVE SERVICES, INC.; )
ADVANCED IMAGING OF PORT           )
CHARLOTTE, LLC; SRA VENTURES, INC. )
d/b/a WESTCOAST RADIOLOGY; CRYSTAL )
CLEAR IMAGING, LTD.; BALTIMORE     )
SUBURBAN HEALTH, LLC; M-SQUARED    )
DIAGNOSTICS, LLC d/b/a NEXT        )
GENERATION MRI and NEENA KANWAR,   )
                                   )
        Defendants.                )

## *QUI TAM* COMPLAINT

This is an action brought by Plaintiff/Relator Jamie Williams on behalf of the United

States of America, the State of Florida and the State of Maryland (collectively "the

Government"). In support thereof, Relator alleges as follows:

1.      From at least 2013, and continuing through the present, SAVN Administrative

Services, Inc.; Advanced Imaging of Port Charlotte, LLC; SRA Ventures d/b/a Westcoast

Radiology; Crystal Clear Imaging, LTD; Baltimore Suburban Health, LLC; M-Squared

Diagnostics, LLC d/b/a Next Generation MRI; and Neena Kanwar (collectively "Defendants"),

international providers of diagnostic imaging services, have engaged in a scheme to defraud the

United States and the above-captioned Plaintiff States by knowingly submitting and/or causing to

(S-1)

be submitted false and/or fraudulent claims to government healthcare programs. As explained in greater detail herein, Defendants knowingly and purposefully engage in numerous schemes designed to defraud government healthcare programs such as Medicare, Medicaid, and CHAMPUS/TRICARE (collectively "Government Payors"). Defendants abuse modifiers and falsify documentation on billing submissions in order to double-bill, improperly increase reimbursements, and receive reimbursements to which they are not entitled.

      2.     The Federal False Claims Act, 31 U.S.C. §§ 3729-3732 ("FCA") provides that any person who knowingly submits or causes to be submitted to the government a false or fraudulent claim for payment or approval is liable for a civil penalty of between $5,500 and $11,000 for each such claim, and three times the amount of the damages sustained by the government. The FCA permits persons having information regarding a false or fraudulent claim against the government to bring an action on behalf of the government and to share in any recovery. The complaint must be filed under seal, without service on the defendant. The complaint remains under seal while the government conducts an investigation of the allegations in the complaint and determines whether to join the action.

      3.     Pursuant to the FCA, Plaintiff/Relator seeks to recover on behalf of the United States and the States listed in this complaint, damages and civil penalties arising from Defendants' fraudulent billing of government healthcare programs.

## PARTIES

      4.     The United States of America and the Plaintiff States are the real parties of interest in this case.

      5.     Relator Jamie Williams is a resident of Punta Gorda, Florida. She is currently working as a Collections Specialist for Defendant SAVN Administrative Services, Inc.

2

("SAVN"), located in Port Charlotte, Florida. She has been with the company since May 16, 2013. Relator handles the billing for the Defendant corporations listed in this Complaint. She works alongside approximately fifty other employees in the billing department at SAVN. Relator's position as Collections Specialist gives her firsthand knowledge of Defendants' billing submissions to government healthcare programs.

6.      Defendant Neena Kanwar  ("Kanwar") is the President and CEO of Defendants SAVN, Advanced Imaging of Port Charlotte, LLC, SRA Ventures d/b/a Westcoast Radiology, Crystal Clear Imaging, LTD, and M-Squared Diagnostics, LLC d/b/a Next Generation MRI.

7.      Defendant SAVN is located in Port Charlotte, Florida. Defendant SAVN provides billing services for all of the Defendant facilities named in this Complaint.

8.      Defendant Advanced Imaging of Port Charlotte, LLC ("Advanced Imaging") is a diagnostic radiology facility located in Port Charlotte, Florida.

9.      Defendant SRA Ventures d/b/a Westcoast Radiology ("Westcoast Radiology") is a diagnostic radiology facility located in Clearwater, Florida.

10.      Defendant Crystal Clear Imaging, LTD ("Crystal Clear Imaging") is an outpatient medical imaging center located in Springfield, Ohio.

11.      Defendant Baltimore Suburban Health, LLC is a primary care facility located in Pikesville, Maryland.

12.      Defendant M-Squared Diagnostics, LLC d/b/a Next Generation MRI ("Next Generation MRI") was a diagnostic radiology facility located in Columbus, Maryland. Next Generation MRI closed in February 2016.

**JURISDICTION AND VENUE**

13.     This action arises under the Federal False Claims Act, 31 U.S.C. §§ 3729-3732, and the State False Claims Acts for the above-captioned States. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1345, 28 U.S.C. § 1367 and 31 U.S.C. § 3732(a), which specifically confers jurisdiction on this Court for actions brought under 31 U.S.C. § 3730. Additionally, 31 U.S.C. § 3732(b) specifically confers jurisdiction on this Court for State-law claims that arise under the same transactions or occurrences as the action brought under 31 U.S.C. § 3730.

14.     This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a), which authorizes nationwide service of process, because Defendants can be found in, reside in, transact business in, and/or have committed the alleged acts in Port Charlotte, Florida, which is in the Middle District of Florida.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)-(c) and 31 U.S.C. § 3732(a) because Defendants can be found in, reside in, or have transacted business in the Middle District of Florida, and many of the alleged acts occurred in this District.

16.     Relator is an original source as defined by the FCA in 31 U.S.C. § 3730(e)(4)(B). Relator has made voluntary disclosures to the United States and the above captioned Plaintiff States prior to the filing of this lawsuit, as required by 31 U.S.C. § 3730(b)(2).

## REGULATORY OVERVIEW

### The Federal and State False Claims Acts

17.     The FCA, as amended by the Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21[1] provides, in relevant part:

> **Liability for Certain Acts.** (1) **In General**—Subject to paragraph (2), any person who—(A) knowingly presents, or causes to be presented, a false or fraudulent

---

[1] The FCA was further amended on March 23, 2010 by the Patient Protection and Affordable Care Act ("PPACA"), Pub. L. 111-148, 124 Stat. 199. PPACA did not impact the portions of the FCA quoted here.

4

claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; ... or (G) knowingly makes, uses, or causes to be made or used a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government, is liable to the United States for a civil penalty of not less than [$5,500] and not more than [$11,000] ... plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1).

**Actions by Private Persons.** (1) A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government.

31 U.S.C. § 3730(b)(1).

18.     Additionally, many states have passed FCA legislation, which, in most instances, closely tracks the Federal FCA. Defendants' acts alleged herein also constitute violations of the Florida False Claims Act, Fla. Stat. § 68.081, *et seq*. ("Florida FCA") and the Maryland False Health Claims Act, Maryland Laws Ch. 4 (S.B. 279) 2-601, *et seq*. ("Maryland FCA")

19.     Relator seeks to recover damages and civil penalties in the name of the United States of America, the State of Florida, and the State of Maryland arising from the false statements and fraudulent claims for payment made by Defendants.

### Government Healthcare Programs

20.     The Medicare Program ("Medicare") is a health insurance program administered by the United States government that is funded by taxpayer revenue. Medicare is directed by the United States Health and Human Services Department ("HHS"). Medicare was designed to assist participating States in providing medical services and durable medical equipment to persons over sixty-five (65) years of age and certain others who qualify.

21.     The Medicaid Program ("Medicaid") is a health insurance program administered by the United States government that is funded by State and Federal taxpayer revenue. It is overseen by HHS. Medicaid was designed to assist participating states in providing medical services, durable medical equipment, and prescription drugs to financially-needy individuals who qualify.

22.     CHAMPUS/TRICARE is a federally-funded program that provides medical benefits to (a) the spouses and unmarried children of (1) active duty and retired service members and (2) reservists who were ordered to active duty for thirty (30) days or longer; (b) the unmarried spouses and children of deceased service members; and (c) retirees.

### Current Procedural Terminology Codes

23.     Current Procedural Terminology codes ("CPT codes") are numbers assigned to every task and service a medical practitioner may provide to a patient, including medical, surgical and diagnostic services. CPT codes are used by providers to determine the amount of reimbursement they are owed for the services that they render.

24.     The use of CPT modifiers is an important part of coding and billing for health care services. Procedure codes may be modified under certain circumstances to more accurately represent the service or item rendered. Modifiers are used to add information or change the description of a service in order to improve accuracy or specificity. The documentation of the service provided must support the use of the modifier.

25.     For purposes of this Complaint, the relevant modifiers are the Q6 modifier and the PS modifier.

26.     The Q6 modifier is appropriately added to a CPT code when the service was furnished by a locum tenens physician. The Center for Medicare and Medicaid Services

("CMS") developed the Q6 modifier specifically to address billing concerns when a physician is away from his or her regular practice; the Q6 modifier designation informs government healthcare providers that a "locum" has stepped into the practice on a temporary basis to provide continuation of medical care. CMS allows a locum to provide services for a maximum of 60 continuous days for the absentee physician. The following elements must be present for the Q6 modifier to be appropriately used:

- The locum physician agrees to see patients of another physician under arrangements of the original physician;

- The original physician is not available to see patients;

- The patient arranges or seeks service of his or her original physician; and

- The locum physician who sees the patient is not in practice for himself or employed as part of another practice.

27.     The following constitute inappropriate uses for the Q6 modifier:

- When the locum physician bills for covering the long-term absence of the original physician (more than 60 days);

- When the locum physician is within the same practice as the original physician.

28.     The PS modifier is appropriately added to a Positron Emission Tomography ("PET") scan CPT code when the beneficiary's treating physician determines that an additional PET scan is needed to determine subsequent anti-tumor strategy for the treatment of cancer.

29.     PET scans are approved for reimbursement under the Medicare program. Prior to June 2013, Medicare reimbursed for one original PET scan and one subsequent PET scan; as of June 2013, Medicare reimburses for up to three PET scans.

**ALLEGATIONS**

7

**Defendants Knowingly Abuse Modifiers and Falsify Documentation in Order to Receive Reimbursements from Government Healthcare Programs to which they are not Entitled**

30.     Relator began her employment with Defendant SAVN in May 2013. Defendant SAVN is the sole billing facility used by the other Defendant corporations named in this Complaint. Therefore, Relator has firsthand knowledge of all improper billing practices alleged herein.

31.     Defendants utilize several schemes designed to defraud Government Payors. They are described in more detail below.

**A.      Defendants knowingly abuse the Q6 modifier in order to obtain government funds to which they are not entitled.**

32.     Defendants misuse the Q6 modifier to defraud Government Payors. This practice has been ongoing since at least 2013.

33.     Defendants' fraudulent use of the Q6 modifier occurs when their physicians have expired, denied or revoked credentials. Credentialing is the primary source verification of a healthcare provider's education, training, work experience, and licensing. It is a CMS requirement completed by physicians using forms 855i and 855r, or through CMS's Provider Enrollment Chain and Ownership System ("PECOS"). Physicians resubmit their credentialing documentation every three years, or more often if required by the State in which they are working.

34.     Relator became aware of Defendants' improper use of the Q6 modifier around October 2013. The fraudulent activity came to light for Relator when she realized that one of Defendants' doctors, Dr. Thomas Fabian (NPI 1669466462), was reading patients' results for all of Defendants' facilities, even though he was not credentialed. Government Payors rejected the majority of his claims because Dr. Fabian was not credentialed so the Defendants needed a way

to obtain reimbursement for his services. Defendants decided to overcome the denials by instructing Relator and others in the billing department to use a credentialed doctor's name in place of Dr. Fabian's and to attach a Q6 modifier to all of his claims submitted to Government Payors. That way, Defendants could get the reimbursements despite the fact that Dr. Fabian was not credentialed, because it would appear as though a locum tenens physician had done the work instead of Dr. Fabian.

35.     Not only was this practice blatantly fraudulent because of the falsified information on claims submitted to Government Payors, it was also improper because Defendants used the names of their own physicians as alleged "locum tenens" physicians. This is an inappropriate use of the Q6 modifier, which can only be used for locum physicians who substitute for original physicians who are not within the same practice group.

36.     Dr. Fabian continued to read results for patients at all of Defendants' facilities for roughly two years with expired credentials. He eventually regained his credentialing in July 2015. Defendants improperly billed Government Payors for Dr. Fabian's services throughout that time period by fraudulently using the Q6 modifier and other physicians' names on his billing submissions. Once Dr. Fabian's credentials were restored, Defendants instructed Relator and others in Defendant SAVN's billing department to re-submit all of Dr. Fabian's claims from mid-2013 through July of 2015 without the Q6 modifier, in an effort to double-bill for services that were improperly billed to Government Payors in the first place. Defendants refer to this scheme as implementing "mass re-bills."

37.     A second mass re-bill followed in or around November 2015. This mass re-bill involved re-submitting claims for Dr. Samer Salhab (NPI 1225296411), who had been working for Defendants' facilities for approximately one year while using expired credentials.

9

Throughout the time period during which Dr. Salhab's credentials were expired, Defendants fraudulently altered claims for reimbursement to Government Payors by using a credentialed doctor's name in place of Dr. Salhab's, and by improperly adding the Q6 modifier. Once Dr. Salhab regained his credentialing in or around November 2015, Defendants re-submitted roughly a year's worth of his claims to Government Payors. This re-bill resulted in more than $2 million of fraudulently obtained funds for Defendants. The claims submitted by Defendants in that re-bill show Dr. Salhab's name, but reflect a time period during which Dr. Salhab was not credentialed.

38.      Defendants' double-billing of Dr. Salhab's claims was intentional. Relator's supervisor, Kim Ridley, at Defendant Kanwar's instruction, told Relator that she wanted a "mass re-bill" for Dr. Salhab's claims in order to "get as much cash as they could get." In a November 13, 2015 email to Relator, Ms. Ridley writes:

> I need to know how we can zero out all claims for Medicare and do the mass rebill on them. We can only go back and [sic] year and technically we should do Medicaid too, but let's get the Medicare done now. Need an answer today.

39.      Elements of the November 2015 re-bill are reflected in a RealMed output that was obtained by Relator. (*See* Exhibit A). It shows claims submitted for re-bill by Defendant Advanced Imaging from 11/04/15 to 11/18/15, and contains, in part, the following information:

| Rtn to Prov. | Suspended | Total Submitted | Total Claims |
|---|---|---|---|
| 19 | 12 | 3740 | 3771 |
| $12141.06 | $10030.00 | $1335061.78 | $1357232.84 |

The chart above shows the results of a mass re-bill submission: 19 claims were immediately bounced back to Defendants due to missing information; 12 claims were suspended because of information that was in need of correction; and 3740 claims (totaling $1,357,232.84) were immediately accepted for Medicare processing.

40.     Defendants instructed Relator and others in Defendant SAVN's billing department to "send EDI" on the suspended claims; "sending EDI" refers to an Electronic Data Interchange transaction, which is an automated transfer of data between Medicare and its contractors. Defendants abused the EDI process and used it as a way to bypass the software designed to catch improper claims, and to force the suspended claims through to Medicare for reimbursement.

41.     Relator was present the day the Medicare funds from the November 2015 re-bill were deposited into Defendant Advanced Imaging's account. Part of her job entails loading the remits into Defendants' system, and she is required to tell Ms. Ridley each time payments on outdated or re-billed claims come in.

42.     Another mass re-bill followed in or around March 2016, and resulted in approximately $5 million of fraudulently-obtained funds for Defendants. This re-bill involved the same scheme as described above. Defendants abused the Q6 modifier in order to bill for non-credentialed doctors' services at their facilities across the country. Defendants instructed Relator and others in Defendant SAVN's billing department to "pick a credentialed doctor and add a Q6 modifier" if they received claims to submit for non-credentialed physicians. Relator estimates that approximately 75 percent of the time, the doctor's name on the original patient report and the doctor's name on the billing submission for the same patient report do not match.

43.     Defendants used numerous doctors in the scheme described above. Those doctors, some of whom are referenced in text messages exchanged between Relator and her supervisor, Ms. Ridley, include, but are not limited to:

- Dr. Samer Salhab
- Dr. Thomas Garrett
- Dr. Robert Girguis
- Dr. Emad Lei

- Dr. Arthur Ballard
- Dr. Joseph Ridgeway
- Dr. Robin Osborn
- Dr. Xia Parker
- Dr. Thomas Fabian
- Dr. Orlando Castillo
- Dr. Dana Borgeson
- Dr. Falguni Patel

44.    The re-bills occur by facility, and reimbursements come back by facility. Most

facilities use a branch of Huntington Bank; Defendant Baltimore Suburban Health uses PNC

Bank. The following is an overview of Defendants' account information:

- **Huntington National Bank**, 2374 Lakeview Dr., Beavercreek, Ohio 45431
  Routing number: 042215060
- **Defendant Crystal Clear Imaging** account number: 01442002733
- **Defendant KMH** account number: 01442005015
- **Defendant Advanced Imaging** account number: 01442005028
- **Defendant Next Generation MRI** account number: 01442011407
- **Defendant Westcoast Radiology** account number: 01442018484

45.    Relator asserts that the majority of the claims contained within the mass re-bills

submitted by Defendants had already been paid once with the Q6 modifier improperly attached

to claims that were originally submitted for physicians with expired credentials. Relator is aware

that the re-bills were done purposefully and that Defendants had no intention of returning funds

to Government Payors if a claim was paid twice.  After one of the re-bills, Relator directly asked

Ms. Ridley if they were planning to return any of the money to the Government, and Ms. Ridley

replied that there would be "no refunds."  When Relator asked Ms. Ridley if Defendants' actions

regarding the re-bill were illegal, Ms. Ridley responded that Relator should do as she was told if

Relator wanted to keep her job.

46.    Defendants' fraudulent conduct regarding the mass re-bills is ongoing. Two more

re-bills occurred on May 27, 2016: one for Defendant Advance Imaging that involved the re-

submission of 1,121 claims for $441,541.13, and one for Defendant Westcoast Radiology that

totaled $181,930.11. Relator is aware that Defendants have received improper reimbursements from the May 27 re-bills. (*See* Exhibit B).

**B.**   **Defendants purposely abuse the PS modifier in order to receive reimbursements from Government Payors to which they are not entitled.**

47.     Defendants misuse the PS modifier in order to obtain improper reimbursements for denied and/or outdated PET scan claims. Prior to June 2013, CMS allowed reimbursement for one PET scan and one follow-up PET scan, if a follow-up was medically necessary. Beginning in June 2013, CMS expanded PET scan coverage to allow for two follow-up scans. PS modifiers are appropriately added to PET scan submissions to indicate that they are medically necessary follow-up procedures.

48.     Both before and after June 2013, Defendants improperly added PS modifiers in order to obtain reimbursement for PET scans that were outside the scope of CMS coverage.

49.     This fraudulent practice is referenced in a text message exchange between Relator and Ms. Ridley:

> $5774.04 old Medicare money. Heather had the PS modifier added and they are coming back thru [sic] and paying old denied PETs. That's just for AIPC [Defendant Advanced Imaging].

50.     Defendants' abuse of the PS modifier is ongoing.

**C.**   **Defendants falsify documentation in order to increase reimbursements from Government Payors.**

51.     In addition to the improper addition of Q6 and PS modifiers on submissions to Government Payors, Defendants instruct employees in their billing department, such as Relator, to change dates of service in order to get claims paid that would otherwise be rejected. Specifically, Ms. Ridley instructs employees at Defendant SAVN to change the dates on claims that are no longer timely, in order to get improper reimbursements from Government Payors.

52.    Relator is aware that Defendant SAVN submits falsified claims for payment to Government Payors on behalf of Defendant Westcoast Radiology.  Ms. Ridley instructs Defendant SAVN's coders to code for the maximum amount possible each time they prepare claims for payment for radiopharmaceutical dosages, even if the maximum dosage is not actually given to the patient. Fraudulent radiology claims are submitted in order to obtain improperly inflated reimbursements from Government Payors.

53.    Defendant SAVN also submits falsified claims for payment to Government Payors on behalf of Defendant Baltimore Suburban. Defendant Baltimore Suburban instructs Defendant SAVN's coders to upcode bills for vaccinations and office visits that are submitted to Government Payors. For example, Defendant Baltimore Suburban instructs Defendant SAVN to code 15-minute patient visits as 45-minute patient visits on claims for payment for services. Defendant Baltimore Suburban also instructs Defendant SAVN to upcode certain vaccinations in order to obtain higher reimbursements than those to which it is entitled. Relator is aware of these practices because she is responsible for submitting claims for all of Defendants' facilities.0

54.    Each time Relator attempts to question Ms. Ridley about Defendants' improper billing practices, she is told to do as instructed if she wants to keep her job. Ms. Ridley, on the other hand, has received several promotions; the most recent occurring in May 2016 when she was promoted to Vice President of Operations, U.S. Division. Defendant Kanwar made the announcement in a company-wide email:

> Kim has been doing an amazing job with the billing department and the marketing department leading to an increase in collections and an increase in referrals [sic] sources as well as payor contracts.

55.    Defendants' improper falsification of documentation on claims submitted to Government Payors is ongoing.

**D.    Defendants "clone" and re-submit previously denied claims to Government Payors in order to receive payments to which they are not entitled.**

56.    On June 15, 2016, Ms. Ridley instructed Relator and nine other employees of Defendant SAVN to "clone" as many old, denied claims as possible and to re-submit them to Government Payors in an attempt to get reimbursements to which Defendants are not entitled. In order to "clone" claims, Relator was told to go into Defendants' web-based claims transmission software, Availity, find an old claim that had previously been denied by Government Payors, click "clone" to make a duplicate of the claim, and click "send" to submit it to Government Payors for reimbursement.

57.    Relator and others at Defendant SAVN were told that they can "pick any claims," but to focus on those that are older than 151 days on the Accounts Receivable ("AR") report because those claims are "old money" and they need to be collected in order to lower the percentage of non-reimbursed claims on the AR report.

58.    Ms. Ridley instructed Relator and other SAVN employees to try to get the cloned claims paid by altering the diagnoses on the submissions. The diagnoses from the original patient accounts are changed without doctor consent, cloned, and then re-submitted to Government Payors.

59.    For example, a cloned claim with a changed diagnosis appears on Patient A's account in Defendants' billing system as follows:

| CLONED CLAIM IN REALMED- USED DX 627.2 AS PRIMARY-- RESENT |
| --- |

In the example above, the original claim—which was denied by Medicare—was subsequently altered to indicate diagnosis code 627.2 instead of the original diagnosis code and then cloned and submitted to Medicare by Defendants.  (*See* Exhibit C).

60.     Defendants engage in this fraudulent behavior in order to artificially inflate submission numbers and to try and extract payments from denied claims.

61.     Defendants' conduct regarding the altering, cloning, and resubmission of previously denied claims is ongoing.

**E.     Defendants' knowledge of the fraud is company-wide.**

62.     Defendant Kanwar, President and CEO of five of the six Defendant corporations named in this Complaint, is aware of all of the fraudulent billing practices that have been alleged in this Complaint. Many emails referencing the improper behavior are copied to "Supervisor USA," "Billings US," and/or "BillAuth," all of which go to Defendant Kanwar. Additionally, Relator has been present during conversations including Defendant Kanwar about the fraudulent billing, and has text messages that reflect Defendant Kanwar's knowledge of the various schemes described above.

**COUNT I**
**VIOLATION OF THE FEDERAL FALSE CLAIMS ACT**

63.     Relator incorporates paragraphs 1 through 62 of this Complaint as though fully set forth herein. This count sets forth claims for treble damages and forfeitures under the Federal False Claims Act, 31 U.S.C. §§ 3729-3732.

64.     As described in greater detail above, Defendants abused government healthcare programs, including the Medicare program, in connection with the improper billing of modifiers Q6 and PS and the purposeful falsification of billing submissions.

65.     Under the Federal False Claims Act, 31 U.S.C. § 3729(a)(1), as amended on May 20, 2009, Defendants have therefore violated:

       i.     31 U.S.C. § 3729(a)(1)(A) by knowingly presenting, or causing to be presented, a false or fraudulent claim for payment or approval;

16

     ii.     31 U.S.C. § 3729(a)(1)(B) by knowingly making, using, or causing to be made or used, a false record or statement material to a false or fraudulent claim; and

     iii.    31 U.S.C. § 3729(a)(1)(C) by conspiring to commit a violation of 31 U.S.C. § 3729(a)(1)(A) and (a)(1)(B).

66.     Because of the false claims made by Defendants, the United States has suffered and continues to suffer damages, and is therefore entitled to a recovery as provided by the FCA of an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each violation.

## COUNT II
## VIOLATION OF THE REVERSE FALSE CLAIMS ACT

67.     Relator incorporates paragraphs 1 through 62 of this Complaint as though fully set forth herein. This count sets forth claims for damages under the Reverse False Claims Act, 31 U.S.C. § 3729(a)(1).

68.     Defendants have violated 31 U.S.C. § 3729(a)(1)(G) by knowingly making, using, or causing to be made or used a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the Government.

69.     Defendants' fraudulent concealment and intentional failure to report overpayments in order to avoid refunding federal money to Government Payors constitutes an unlawful avoidance of an obligation to money owed to the United States.

70.     As a direct result of Defendants' conduct, the United States has suffered damages and is therefore entitled to recovery as provided by the False Claims Act.

## COUNT III

## VIOLATION OF THE FLORIDA FALSE CLAIMS ACT

71.     Relator incorporates paragraphs 1 through 62 of this Complaint as though fully set forth herein. This count sets forth claims for treble damages and forfeitures under the Florida False Claims Act, Fla. Stat. § 68.081, *et seq.*

72.     As described in greater detail above, Defendants abused government healthcare programs, including the Florida Medicaid program, in connection with the improper billing of modifiers Q6 and PS and the purposeful falsification of billing submissions.

73.     Under the Florida False Claims Act, Fla. Stat. § 68.082(2), Defendants have therefore violated:

  i.     Fla. Stat. § 68.082(2)(a) by knowingly presenting or causing to be presented to an officer or employee of an agency a false or fraudulent claim for payment or approval;

 ii.     Fla. Stat. § 68.082(2)(b) by knowingly making, using, or causing to be made or used a false record or statement to get a false or fraudulent claim paid or approved by an agency; and

iii.     Fla. Stat. § 68.082(2)(c) by conspiring to submit a false or fraudulent claim to an agency or to deceive an agency for the purpose of getting a false or fraudulent claim allowed or paid.

74.     Because of the false claims made by Defendants, the State of Florida has suffered and continues to suffer damages, and is therefore entitled to a recovery as provided by the Florida False Claims Act of an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each violation.

## COUNT IV
## VIOLATION OF THE MARYLAND FALSE HEALTH CLAIMS ACT

75.     Relator incorporates paragraphs 1 through 62 of this Complaint as though fully set forth herein. This count sets forth claims for treble damages and forfeitures under the Maryland False Health Claims Act, Maryland Laws Ch. 4 (S.B. 279) 2-602, *et seq.*

76.     As described in greater detail above, Defendants abused government healthcare programs, including the Maryland Medicaid program, in connection with the improper billing of modifiers Q6 and PS and the purposeful falsification of billing submissions.

77.     Under the Maryland False Health Claims Act, Maryland Laws Ch. 4 (S.B. 279) 2-602(a), Defendants have therefore violated:

    i.     Maryland Laws Ch. 4 (S.B. 279) 2-602(a)(1) by knowingly presenting or causing to be presented a false or fraudulent claim for payment or approval;

    ii.    Maryland Laws Ch. 4 (S.B. 279) 2-602(a)(2) by knowingly making, using, or causing to be made or used a false record or statement material to a false or fraudulent claim; and

    iii.   Maryland Laws Ch. 4 (S.B. 279) 2-206(a)(3) by conspiring to commit a violation of Maryland Laws Ch. 4 (S.B. 279) 2-602.

78.     Because of the false claims made by Defendants, the State of Maryland has suffered and continues to suffer damages, and is therefore entitled to a recovery as provided by the Maryland False Health Claims Act of an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each violation.

## PRAYER

WHEREFORE, Relator Jamie Williams, on behalf of the United States, the State of Florida, and the State of Maryland, respectfully requests that:

a.    This Court enter an order determining that Defendants violated the Federal False

Claims Act, the Florida False Claims Act, and the Maryland False Health Claims

Act by making false statements and records to cause false claims to be submitted

to the United States, the State of Florida, and the State of Maryland;

b.    This Court enter an order requiring Defendants to pay the maximum civil

penalties allowable to be imposed for each false or fraudulent claim presented to

the United States, each false or fraudulent claim presented to the State of Florida,

and each false or fraudulent claim presented to the State of Maryland;

c.    This Court enter an order requiring that Defendants cease and desist from

violating the Federal False Claims Act, the Florida False Claims Act, and the

Maryland False Health Claims Act;

d.    This Court enter an order requiring Defendants to pay all expenses, attorney's

fees and costs associated with this action;

e.    This Court enter an order paying Relator Jamie Williams the maximum statutory

award for her contributions to the prosecution of this action; and

f.    Any and all other relief as this Court determines to be reasonable and just.

**PLAINTIFF/RELATOR DEMANDS A TRIAL BY JURY ON ALL COUNTS**

Dated: August 9, 2016

Respectfully submitted,

JESSE L. HOYER
Florida Bar No.: 076934
jlhoyer@jameshoyer.com
SEAN ESTES
Florida Bar No.: 055770
sestes@jameshoyer.com

20

JAMES HOYER, P.A.
4830 W. Kennedy Blvd.
One Urban Centre, Suite 550
Tampa, Florida 33609
Tel.: 813-397-2300
Fax: 813-397-2310

**Counsel for Relator**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been furnished by Certified Mail, Return Receipt Requested, this 9ᵗʰ day of August, 2016 to the following:

The Honorable Loretta E. Lynch
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530-0001

A. Lee Bentley, III, United States Attorney
United States Attorney's Office
2110 First Street
Suite 3-137
Fort Myers, FL  32902

The Honorable Pam Bondi
Attorney General of Florida
The Capitol, PL 01
Tallahassee, FL  32399

Jeff Atwater
Chief Financial Officer
Florida Department of Financial Services
200 East Gaines Street
Tallahassee, FL  32399-0300

Rod J. Rosenstein, United States Attorney
United States Attorney's Office
36 South Charles Street
4th Floor
Baltimore, MD 21201

JESSE L. HOYER